# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED
2017 JUL 24  AM 10: 33

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76730-5-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ISRAEL TORIBIO-LAUREANO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 24, 2017 |

SPEARMAN, J. — Israel Toribio-Laureano appeals his conviction of delivery of a controlled substance and possession with the intent to deliver. He contends that the trial court erred by admitting testimonial hearsay, refusing to give a missing witness instruction, commenting on the evidence, and failing to make an individual inquiry into his ability to pay discretionary financial obligations. We affirm Toribio-Laureano's conviction but remand for resentencing with respect to discretionary financial obligations.

## FACTS

Debra Mendez and Jose Mendez Lopez agreed to act as informants in a "buy-bust" operation. Verbatim Report of Proceedings (VRP) at 30. In a buy bust operation, the informants set up a meeting with their drug supplier. Police search the informants and their car immediately before the meeting. Officers give the

informants money with prerecorded serial numbers. Officers then follow the informants to the meeting, observe the transaction, and arrest the supplier.

Mendez and Mendez Lopez carried out this operation as planned. They made a phone call to set up the meeting. Immediately before the meeting, officers searched Mendez and Mendez Lopez. Police then provided the informants with prerecorded "buy money" and followed them to the meeting place. VRP at 33, 35. While officers watched, Mendez Lopez met Toribio-Laureano and engaged in conversation. The officers observed hand movements, but did not specifically see a hand-to-hand exchange. Immediately after the meeting, Mendez Lopez gave the officers a baggie of methamphetamine.

Toribio-Laureano was arrested as he drove away from the meeting. He had the prerecorded buy money on his person and methamphetamine in his car. Toribio-Laureano was convicted by a jury of delivery of a controlled substance and possession with intent to deliver.

## DISCUSSION

Toribio-Laureano challenges his conviction on several grounds. He first asserts that the trial court erred by admitting testimonial hearsay.

At trial, Detective Jeffrey Humphrey of the Lewis County Regional Drug Task Force described a buy-bust operation. He stated that Mendez and Mendez Lopez agreed to set up such an operation. Humphrey stated that, to implement the plan, Mendez Lopez made a phone call. Humphrey said he listened to the call, but he did not understand the conversation because it was not in English. The prosecutor inquired: "After that conversation, what was the next part of the

2

plan; what were you guys going to do after that?" VRP at 31. Humphrey replied: "Mendez agreed to meet with their source that they knew as Primo." Id. Toribio-Laureano objected to the statement, asserting that it was hearsay. The trial court overruled the objection, finding that the statement was not hearsay because it was not being offered for the truth of the matter asserted.

On appeal, Toribio-Laureano asserts that the statement was testimonial hearsay and its admission violated the confrontation clause. A criminal defendant has the right to confront the witnesses against him. U.S. CONST. amend. VI. Admission of testimonial hearsay generally violates the confrontation clause. State v. Mason, 160 Wn.2d 910, 918, 162 P.3d 396 (2007) (citing Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L.Ed.2d 177 (2004)). Hearsay is an out of court statement offered for the truth of the matter asserted. ER 801(c). A hearsay statement is testimonial if it was intended to establish a fact and was given in such circumstances that it was reasonable to expect that it would be used in prosecution. Mason, 160 Wn.2d at 922. We review a trial court's decision as to whether a statement is hearsay for abuse of discretion. Id.

In this case, the challenged statement was introduced to explain how the buy-bust operation proceeded. It was not offered to establish the truth of the matter asserted. The trial court did not abuse its discretion in ruling that the statement was not hearsay.

However, we consider whether a statement violates the confrontation clause even if the trial court reasonably ruled that the statement was not hearsay. Mason, 160 Wn.2d at 922. We review an alleged confrontation clause violation

de novo. Id. Statements admitted in violation of the confrontation clause are subject to harmless error analysis. Id. at 927 (citing State v. Davis, 154 Wn.2d 291, 304, 111 P.3d 844 (2005)). An error is harmless when the untainted evidence is overwhelming, so that there is no reasonable probability that the result of the trial would have been different if the error had not occurred. Id.

Toribio-Laureano argues that the statement was testimonial because it was made by an informant, to police, in circumstances that would lead a reasonable person to believe that the statement would be used in prosecution. We decline to reach this argument because, even if the statement was testimonial, any error was harmless. The State presented evidence that Toribio-Laureano met with Mendez Lopez. Immediately after the meeting, Mendez Lopez had methamphetamine and Toribio-Laureano had the buy money. In light of this evidence, there is no reasonable probability that, but for the allegedly improper statement, the outcome of the trial would have been different.

Toribio-Laureano next contends that the trial court erred by refusing to give a missing witness instruction. Where a trial court's refusal to give an instruction is based on the facts of the case, we review for abuse of discretion. State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998). If the decision is based upon a ruling of law, our review is de novo. Id.

Under the missing witness doctrine, where a witness that would naturally be expected to testify does not testify, the jury may infer that the witness's testimony would have been unfavorable. State v. Montgomery, 163 Wn.2d 577, 598, 183 P.3d 267 (2008) (citing State v. Blair, 117 Wn.2d 479, 485-86, 816 P.2d

718 (1991)). The missing witness doctrine applies only when the potential testimony is material and not cumulative; the witness is particularly available to only one party; the doctrine is raised early enough so that the party has an opportunity to explain the witness's absence; and the witness's absence is not adequately explained. Id. at 598-99. The doctrine may not be applied where it would infringe upon a criminal defendant's right to silence. Id. at 599.

In this case, Humphrey stated that Mendez and Mendez Lopez were facing charges for delivery of controlled substances. He stated that they agreed to participate in the buy bust operation in exchange for not being immediately booked into jail. Humphrey stated that Mendez and Mendez Lopez would not be testifying. He explained that, while he had hoped that they would testify, testifying was not part of their agreement to act as informants.

After both parties rested, defense counsel requested a missing witness instruction, arguing that Mendez and Mendez Lopez were peculiarly available to the State because they were informants. The prosecutor stated that the informants' own cases were pending and to testify in this case would subject them to impeachment if they later testified in their own defense. The trial court denied the instruction. The court ruled that the informants were not peculiarly available to the State because they were known to Toribio-Laureano. Id. And, because Mendez and Mendez Lopez were facing their own criminal charges, the court ruled that they were unavailable under the Fifth Amendment.

Toribio-Laureano contends that the trial court erred. He asserts that the informants were particularly available to the State because they acted as police

5

agents. He also asserts that Mendez and Mendez Lopez had the right not to testify in the case against them, but that nothing prevented them from testifying about Toribio-Laureano's case.

We disagree. Whether an absent witness is peculiarly available to one party is a question of fact, to be determined based on all the circumstances. State v. Cheatam, 150 Wn.2d 626, 653, 81 P.3d 830 (2003). Here, Toribio-Laureano knew Mendez and Mendez Lopez and had the opportunity to call them as witnesses. The trial court's decision that the informants were not peculiarly available to the State is not manifestly unreasonable. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). Nor did the trial court err when it ruled that Mendez and Mendez Lopez had the Fifth Amendment right not to testify at Toribio-Laureano's trial. In light of the pending criminal charges against them, the trial court reasonably concluded that any testimony could be incriminating. See Kastigar v. United States, 406 U.S. 441, 444, 92 S. Ct. 1653, 32 L.Ed.2d 212 (1972).

Next, Toribio-Laureano asserts that the packet of jury instructions improperly included a judicial comment on the evidence. Judges are prohibited from commenting on the evidence. State v. Jackman, 156 Wn.2d 736, 743-44, 132 P.3d 136 (2006) (citing State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). Comments that imply or expressly convey a judge's personal attitudes towards the evidence or the merits of the case are impermissible. Id. at 744 (citing State v. Jacobsen, 78 Wn.2d 491, 495, 477 P.2d 1 (1970)).

6

The prohibition on judicial comments extends to jury instructions. Id. at 743 (citing State v. Levy, 156 Wn.2d 709, 719-20, 132 P.3d 1076 (2006)). Courts have held that jury instructions constitute a judicial comment on the evidence where the instructions state as fact an issue to be determined by the jury. See Levy, 156 Wn.2d at 721 (instruction described a location as a building but whether it was a building was a question for the jury); Becker, 132 Wn.2d at 64-65 (instruction described program as a school but whether it was a school was a disputed issue of fact); Jackman, 156 Wn.2d at 744 (instruction stated the victims' birthdates but the State had the burden of proving the victims were minors). We review a challenged jury instruction de novo, in the context of the instructions as a whole. Jackman, 156 Wn.2d at 743.

In this case, the court provided the jury with a packet of jury instructions. The caption on the cover page stated "STATE'S PROPOSED JURY INSTRUCTIONS." Clerk's Papers (CP) at 10. The cover page also included the judge's signature. Toribio-Laureano contends that the caption suggested that the judge favored the State's position. The State argues that the caption was not a comment on the evidence and suggested, at most, that the court believed the State provided instructions that accurately stated the law.

We agree with the State. Toribio-Laureano raises no objection to the instructions themselves. The parties thus agree that the instructions were accurate statements of the law. The caption does not state as fact any issue to be determined by the jury or convey the judge's opinion as to the merits of the case. The trial court did not make an improper judicial comment.

7

Toribio-Laureano next argues that the trial court improperly imposed discretionary legal financial obligations (LFOs). Before imposing discretionary LFOs, the court must make an individualized inquiry into the defendant's ability to pay. State v. Blazina, 182 Wn.2d 827, 837-38, 344 P.3d 680 (2015). The State concedes that, in this case, the trial court imposed LFOs without inquiring into Toribio-Laureano's ability to pay. We reverse the imposition of discretionary LFOs and remand for the trial court to make an inquiry into Toribio-Laureano's ability to pay.

Finally, Toribio-Laureano asks that we decline to award costs of appeal to the State. Appellate costs are awarded to the prevailing party unless this court directs otherwise or "unless the commissioner or clerk determines an adult offender does not have the current or likely future ability to pay such costs." RAP 14.2. Where an offender has been found indigent by the trial court, "that finding of indigency remains in effect, . . . unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2.

Toribio-Laureano was found indigent by the trial court. If the State has evidence indicating that his financial circumstances have significantly improved since the trial court's finding, it may file a motion for costs with the commissioner. We decline to rule on the issue of costs.

No. 76730-5-I/9

Affirmed and remanded for resentencing with respect to discretionary financial obligations.

WE CONCUR:

Spearman, J.

Trickey, ACJ

Mann, J.